ACCEPTED
03-15-00053-CR
6660449
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/26/2015 12:51:06 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00053-CR

IN THE COURT OF APPEALS

THIRD DISTRICT OF TEXAS AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/26/2015 12:51:06 PM
JEFFREY D. KYLE
Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CAUSE NO. 71,785

IN THE 264TH JUDICIAL DISTRICT OF

BELL COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KEVIN DUAN DRISDALE                    APPELLANT

VS

THE STATE OF TEXAS                     APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPELLANT'S BRIEF

_____

APPEAL OF JUDGMENT IN CAUSE NO. 71,785
FROM THE 264TH JUDICIAL DISTRICT
OF BELL COUNTY, TEXAS

_____

NO ORAL ARGUMENT REQUESTED

JAMES H. KREIMEYER
ATTORNEY FOR APPELLANT
P.O. BOX 727
BELTON, TEXAS 76513
(254) 939-9393
(254) 939-2870 FAX
T.S.B. #11722000
jkreime@vvm.com

## IDENTITY OF PARTIES AND COUNSEL

**Judge at Trial**:                Hon. Martha J. Trudo
264th Judicial District
P.O. Box 324
Belton, Texas   76513

**Prosecutors**:                Michael Waldman
Asst. District Attorneys
P.O. 540
Belton, Texas 76513

**Defense Attorney at Trial** Scott Wilkerson
Attorney at Law
100 W. Cent.TX Exp S305
Harker Heights, TX 76542

**Attorney for Appellant**:    James H. Kreimeyer
Attorney at Law
P.O. Box 727
Belton, TX 76513

**Attorney for Appellee**:     Bob Odom
Asst. District Attorney
P.O. Box 540
Belton, Texas   76513

**Appellant**:                  Kevin Duan Drisdale
TDCJ#01972026
James Bradshaw State Jail
P.O. Box 9000
Henderson, TX 75653

# **TABLE OF CONTENTS**

**PAGE NO.**

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . .iii

INDEX OF AUTHORITIES. . . . . . . . . . . .iv-v

STATEMENT OF THE CASE. . . . . . . . . . . .1-3

ISSUES PRESENTED. . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . 3-9

SUMMARY OF THE ARGUMENT. . . . . . . . . . . .9

ARGUMENT STANDARD OF REVIEW . . . . . . . .9-17

PRAYER. . . . . . . . . . . . . . . . . . . .18

CERTIFICATE OF COMPLIANCE. . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . .20

# INDEX OF AUTHORITIES

**CASES:**                                              **PAGE NO.**

*Malone v. State,* 163 S.W.3d 785, 795
    (Tex. App. 2005). . . . . . . . . . . . . . . . 10

*State v. Ibarra,* S.W.2d 242, 243
    (Tex. Crim. App. 1997). . . . . . . . . . . . 10

*U.S. v. Matlock,* 415 U.S. 164 (1974). . . . .10,11,17

*Georgia v. Randolph,* 547 U.S. 103, 104, (2006)11–12

*Rivas v. State,* 446 S.W.3d 575, 580
    (Tex. App. 2014), on remand from pdr, reh'g
    overruled (Oct. 30, 2014). . . . . . . . . . .12

*Pruett v. State,* 463 S.W.2d 191, 194
    (Tex. Crim. App. 1970). . . . . . . . . . . . 12

*Denton v. Texas Dep't of Pub. Safety Officers Ass'n*
    862 S.W.2d 785, 791 (Tex. App. 1993), writ
    granted (May 11, 1994), aff'd and remanded,
    897 S.W.2d 757 (Tex. 1995). . . . . . . . . . 13

*U.S. v. Taylor,* 600 F.3d 678 (2010). . . . . .13–15

*U.S. v. Salinas-Cano,* 959 F2d 861
    (10th Cir.1992). . . . . . . . . . . . . . . .14–15

*Frazier v. Cupp,* 394 U.S. 731, 740, (1969). . . .16

*Coolidge v. New Hampshire,* 403 U.S. 443, (1971). 16

iv

**STATUES:**
United State Constitution

    Fourth Amendment. . . . . . . . . . . . . . .7

    Fifth Amendment. . . . . . . . . . . . . . . 7

    Sixth Amendment. . . . . . . . . . . . . . . 7

    Fourteenth Amendment. . . . . . . . . . . . .7

Texas Constitution

    Article I §9. . . . . . . . . . . . . . . .7

    Article I §10. . . . . . . . . . . . . . . . 7

    Article I §19. . . . . . . . . . . . . . . . 7

Texas Crim. Proc. Code

    Article 38.23. . . . . . . . . . . . . . . . 7

NO.03-15-00053-CR

IN THE

COURT OF APPEALS

THIRD DISTRICT OF TEXAS

AT AUSTIN

**********************************************************

KEVIN DUANE DRISDALE                         APPELLANT

VS.

THE STATE OF TEXAS                           APPELLEE

**********************************************************

APPELLANT'S BRIEF

STATEMENT OF THE CASE

KEVIN DUANE DRISDALE, appellant, was charged by indictment in paragraph one with the offense of possessing, with intent to deliver, a controlled substance: Cocaine, more than four grams but less than 200 grams. In paragraph two of the indictment, a prior conviction for a similar offense was alleged for enhancement. (Cl. R. at 4)

1

After hearing appellant's motion to suppress search and arrest; (Cl. R. at 18) the motion was denied by the trial court. Appellant then entered a plea of guilty with a plea agreement to be sentenced to twenty (20) years in the Texas Department of Criminal Justice—Institutional Division. (Cl. R. at 33)(R.R. VIII at 25) Appellant's right to appeal his pre-trial motion to suppress was preserved. (Cl. R. at 33) The trial court followed the plea recommendation and sentenced appellant to twenty (20) years in the Institutional Division. (R.R. VIII at 30)

Appellant's trial lawyer filed a motion for new trial on January 7, 2015. (Cl. R. at 51) The trial court denied the motion on the same date. (Cl. R. at 53) A notice of desire to appeal *pro se* was filed on January 5, 2015. (Cl. R. at 43) An amended notice of appeal was

filed by appellate counsel with this court on March 25, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument.

## ISSUE PRESENTED

The trial court erred in denying appellant's motion to suppress because the consent to search given to law enforcement officers by appellant's co-tenant did not extend to the contents of the container opened and viewed by the law enforcement officers and seized by the law enforcement officers without a search warrant.

## STATEMENT OF FACTS

Appellant proffered that at the time of his arrest there was no warrant to arrest appellant and the State agreed Appellant had "standing". (R. R. VII at 5) On August 11, 2013 City of Killeen police officers responded (R.R.

VII at 7) to a 911 "hang up" call to an apartment complex in Killeen, Bell County, Texas.

A female flagged the officers down. A Killeen police officer, Stickles; along with an officer in training, Hydorn, were the responding officers. (R.R. VII at 9) After verifying the female was the caller, Brenda Layton. Layton pointed to appellant, who was standing on a second story walkway. Layton told officers appellant would run, had drugs and was on parole. Layton indicated the drugs were kept in a large brown box. (R.R. VII at 16) Stickles went up to speak to appellant. (R.R. VII at 11) Hydorn went to the stairwell and watched to make sure appellant did not run. Stickles determined there could be a domestic situation. Appellant did not try to run or evade the officer. (R.R. VII at 12) Appellant was identified as the person on the walkway.

4

Appellant told the officer there had been a verbal argument with Layton and she had misplaced her keys and phone. (R.R. VII at 13)

Appellant told the officer he leased the apartment and was allowed to leave to go work out at a gym. Appellant was believed to have left the area. (R.R. VII at 14)

Layton was upset and scared and wanted to verify appellant had left. She further stated there had been a verbal argument over the cell phone and appellant had interrupted her 911 emergency call. Stickles went with Layton to the apartment. (R.R. VII at 15) Layton believed appellant had her cell phone and keys. Layton then told the officer appellant had struck her because of something on her phone. (R.R. VII at 16)

Stickles asked Layton if she would like for him to assist her in looking for her phone in the apartment. She said she was on the lease

5

and had a 60 day notice to vacate the apartment. Layton gave the officer verbal consent to help her search for her keys and phone. While looking for the items, Stickles noticed a brown wooden box (R.R. VII at 17) Layton had described. It was on the top shelf of the open closet. Stickles asked if he could look in the box and opened it and found baggies, razor blades, digital scales and what he believed, based on his experience, to be cocaine. (R.R. VII at 18)

At about this time, appellant was returning to the apartment and Stickles put the box back on the shelf in the same spot. The officer then spoke to appellant. (R.R. VII at 19) It was determined the reason appellant returned was to get his ear phones. He wanted to get them himself from the bedroom and this was done. (R.R. VII at 20) Appellant lifted the mattress and revealed the phone. (R.R. VII at

21) Appellant was asked to show what items were his in the closet and he was vague about what was his. There was a safe which appellant denied was his, but he could state there was nothing in the safe. (R.R. VII at 22) At that point, Stickles placed appellant under arrest. (R.R. VII at 23)

Appellant's counsel relied upon the pleadings in the motion to suppress for the basis to suppress the fruits of the search. The basis in the motion to suppress for the granting of the motion was the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution; Art I Sections 9, 10, and 19 of the Constitution of the State of Texas. (Cl. R. at 19) As well as Article 38.23 Tex. Crim. Proc. Code. (Cl. R. at 18)

Upon denying appellant's motion to suppress, the trial court made these findings verbally on the record:

7

Layton and (appellant) apparently both live in the apartment. The apartment being leased by (R.R. VII at 86) Layton and there has been a 911 hang up call claiming domestic violence, that she detailed information regarding interference with 911, as well as physical assault, and reportedly indicated the (appellant) was selling drugs and was on parole and might run and she was the owner of the apartment and given consent to search after explaining that the (appellant) had taken her keys and her cell phone and she gave consent to the police officers to help her look and search for the keys and cell phone.

The trial court further found the closet to which the box containing the drugs and paraphernalia, scales, baggies was found in a closet containing clothing belonging to both Brenda Layton as well as (appellant) and that she had given consent as well for the officer to help her search for her keys and her cell phone.

The box was returned to the shelf when apparently the recruit and (appellant) came back in to the apartment but the drugs had already been discovered with the consent, (appellant) was arrested at that point for the interference after providing the cell phone which was hidden under the mattress, was arrested for the

8

interference with the 911, and apparently then the drug possession following the discovery.

The trial court found there was consent for the search which was actually being given to find keys and cell phone and certainly [*sic*] was discovered. So the court is going to deny the motion to suppress. (R.R. VII at 87)

## SUMMARY OF THE ARGUMENT

The State failed to prove by clear and convincing evidence the co-tenant of appellant had common authority to authorize the opening of the container attributed to appellant or to the seizure of the contents without a warrant.

## ARGUMENT

## STANDARD OF REVIEW

At a hearing on a motion to suppress evidence, the trial court is the sole and exclusive trier of fact and the judge of the credibility of witness testimony. Review of the trial court's ruling on a motion to suppress is under a bifurcated standard of review, giving

9

almost total deference to the trial court's determination of historical facts and reviewing de novo the court's application of the law. (citations omitted) *Malone v. State*, 163 S.W.3d 785, 795 (Tex. App. 2005) The Texas Court of Criminal Appeals has repeatedly held the State to a standard of clear and convincing evidence when attempting to show the voluntariness of a consent to search. *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997)

The important issues before the court are: Did co-tenant Layton have the authority to consent to the opening of the brown box, and the seizure of the contents, and has the State shown this authority by clear and convincing evidence?

In *U.S. v. Matlock*, 415 U.S. 164 (1974) the United State Supreme Court recognized the voluntary consent of a joint occupant to search the premises jointly occupied is valid against

the co-occupant, permitting evidence discovered in the search to be used against him in the criminal trial. *Matlock,* supra. pp. 169 The stated purpose of law enforcement officers in seeking permission to search from the Matlock's co-occupant was to look for money and a gun, as evidence in a bank robbery prosecution. A sum of money was found in a diaper bag in a closet jointly used by both parties; the consenting party and Matlock. The Supreme Court never addressed the issue of did the co-occupant's consent extend to the diaper bag. Since the co-occupant was holding a small child in her arms when she gave consent, it might be clear she had access and a possessory interest in the diaper bag.

A co-tenant who has an interest in bringing criminal activity to light or in deflecting suspicion from himself can, e.g., tell the police what he knows, for use before a

11

magistrate in getting a warrant. *Georgia v. Randolph*, 547 U.S. 103, 104, (2006)

Once Layton, as a named "informant" told Stickles about the contents of the brown box; a proper search warrant could have been obtained. Information from a named informant, and the magistrate could find the information recent and detailed enough to suggest that the informant had direct knowledge sufficient for a probable cause determination. *Rivas v. State*, 446 S.W.3d 575, 580 (Tex. App. 2014), on remand from pdr, reh'g overruled (Oct. 30, 2014)

As far back as 1970 it was noted state courts are not bound by ruling of lower federal courts on Federal Constitutional questions, both state and federal courts being of parallel importance in deciding such questions, and both answer to the Supreme Court on direct review. United States ex rel. *Pruett v. State*, 463 S.W.2d 191, 194 (Tex. Crim. App. 1970)

Decisions of the federal courts of appeals and district courts do not bind Texas courts although they are received with respectful consideration. *Denton v. Texas Dep't of Pub. Safety Officers Ass'n*, 862 S.W.2d 785, 791 (Tex. App. 1993), writ granted (May 11, 1994), aff'd and remanded, 897 S.W.2d 757 (Tex. 1995)

The United States Court of Appeals for the Sixth Circuit decided *U.S. v. Taylor*, 600 F.3d 678 (2010) based on very similar facts to the case *sub judice*. There the tenant, Arnett, gave permission to search the apartment. While conducting this search, a shoebox was opened and the contents, a handgun and ammunition, were seized by law enforcement officers. Taylor was not a co-tenant, but was allowed to store items in a spare room by the tenant. The shoebox was in a closet along with Taylor's clothing. U.S. Court of Appeals reasoned the expectation of privacy in one's luggage is not

lessened by storing on the premises of a third-party. Rather, the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in places under the general control of another. A shoebox is not "luggage" but it is an often-used storage container. (*Taylor*, supra. pp. 682-684) In *United States v. Salinas-Cano*, 959 F.2d 861 (10th Cir.1992), the Tenth Circuit suppressed the results of a search of luggage that Cano had left at his girlfriend's apartment, even though she had given the police specific consent to search the luggage. (*Salinas-Cano*, 959 F.2d at 862) The Sixth Circuit in *Taylor* noted several factors that the Tenth Circuit took into consideration in *Cano*: (1) the type of container and whether that type "historically command[ed] a high degree of privacy," (2) whether the container's owner took any precautions to protect his

14

privacy, (3) whether the resident at the premises initiated the police involvement, and (4) whether the consenting party disclaimed ownership of the container. Id. at 864. Applying these factors the search of the suitcase unlawful because it was a type of container long associated with privacy expectations, Cano had ... never permitted his girlfriend to look inside the suitcase, he had not abandoned the suitcase but instead maintained a periodic presence in the apartment, and the law enforcement agents had not questioned his girlfriend in a manner sufficient to determine whether she had mutual use of the Cano's suitcase.

Appellant will concede Layton had the authority to admit the police officers to the apartment and to conduct a search for her phone and keys; but there is nothing in the record of the hearing on appellant's motion to suppress

15

to show Layton had mutual use and/or authority to allow the officers to open the brown box, much less consent to the seizure the contents without a warrant.

The Supreme Court of the United States noted that their prior recognition of the constitutional validity of 'third party consent' searches in cases like *Frazier v. Cupp*, 394 U.S. 731, 740, (1969) and *Coolidge v. New Hampshire*, 403 U.S. 443, (1971), supported the view that a consent search is fundamentally different in nature from the waiver of a trial right. These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship

16

to the premises or effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171–72, (1974)

While Layton may have possessed common authority over the premises, there is no showing in this record that she had common authority over the brown box to consent to the search and seizure of the brown box, a closed container. While the officers, based on the information from Layton, may have had ample authority to obtain a search warrant by acting on that information from Layton, they did not.

Because the State has failed to show by clear and convincing evidence the authority for Layton to consent to the opening and, ultimately, the seizure of the brown box and its contents; appellant's motion to suppress should have been granted. The trial court erred in failing to do so.

## **PRAYER**

Wherefore, premises considered, appellant prays the Court of Appeals reverse the trial court's denial of his motion to suppress and remand this case to the trial court and for any other relief to which appellant may be entitled.

Respectfully submitted,

/s/ James H. Kreimeyer
James H. Kreimeyer
Counsel for Appellant
P.O. Box 727
Belton, TX 76513
254-939-9393 Fax:939-2870
TSB#11722000
jkreime@vvm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the length limitations of Texas Rule of Appellate Procedure 9.4(i)(3) because this brief contains 2,266 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1); a number which is less than the 15,000 words allowed under Rule 9.4(i)(2)(B).

I also certify that this brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because this brief has been written with a conventional typeface using a 14-point font (with footnotes no smaller than 12-points) using Microsoft Office Word 2010 (version 14), in Courier New font.

/s/ James H. Kreimeyer
JAMES H. KREIMEYER

**CERTIFICATE OF SERVICE TO OPPOSING COUNSEL**

This is to certify a true copy of the foregoing Appellant's Brief was furnished to Bob Odom Assistant District Attorney for Bell County, P.O. Box 540, Belton, Texas 76513 on the 24th day of August, 2015.

/s/ James H. Kreimeyer
JAMES H. KREIMEYER

**CERTIFICATE OF SERVICE TO APPELLANT**

This is to certify a true copy of the brief, served to Appellant, Kevin Duane Drisdale, James Bradshaw State Jail, P.O. Box 9000, Henderson, TX 75653 on the 24th day of August, 2015.

/s/ James H. Kreimeyer
JAMES H. KREIMEYER